[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
By Amended Petition dated June 3, 1998, the petitioner CT Page 13582 alleges that his confinement in the custody of the Commissioner of Corrections is unlawful on the basis of his claim that he was rendered ineffective assistance of counsel in the underlying criminal proceedings. Based upon the evidence adduced at the habeas hearing, the Court makes the following findings and order.
Following a jury trial in the Superior Court, Judicial District of New London at New London, the petitioner was convicted of One Count of Illegal Sale of a Controlled Substance in violation of C.G.S. § 21a-278(b) ("Count One"); and One Count of Illegal Sale of a Controlled Substance within 1500 feet of a School, Public Housing Project or Licensed Day Care Center in violation of C.G.S. § 21a-278a(b) ("Count Two").
On May 29, 1996 the petitioner was sentenced to eight years incarceration suspended after five years and five years probation on Count One and three years incarceration on Count Two, said three year sentence to run consecutive to the sentence imposed on Count One for a total effective sentence of eleven years incarceration suspended after eight years and five years of probation. The petitioner is presently an inmate in the custody of the Commissioner of Corrections, serving the imposed sentence.
In the underlying criminal proceedings, the petitioner was represented at the trial court level by Attorney Michael Walker.
In the First Count of the petition, the petitioner alleges that his trial attorney, Attorney Walker, failed to interview vital witnesses prior to trial; failed to call vital witnesses at the time of trial; failed to adequately investigate the matter; and failed to obtain exculpatory information and evidence for use during the trial.
In the Second Count of the petition, the petitioner alleges that "there was evidence of juror misconduct at the trial . . . (and that) trial counsel failed to make and pursue a Motion for a New Trial.
In the Third Count of the petition, the petitioner alleges that his appellate attorney, Bruce Sturman, failed to prepare an appellate brief and pursue, and ultimately withdrew, the plaintiff's appeal.
At the habeas trial, the plaintiff's habeas attorney, Vickie Hutchinson, made an oral Motion to Amend the petition to include CT Page 13583 a Fourth Count alleging that Attorney Walker was further ineffective for failing to file an application for review of the plaintiff's sentence with the Sentence Review Division of the Superior Court within the time period prescribed by law. The Court granted said oral Motion to Amend and further granted the plaintiff's request to claim as an additional prayer for relief, the right to file such an application for sentence review.
At the habeas trial, Attorney Walker testified that he was admitted to the bar in 1989 and that he practices law in a general practice. He testified further that he had, prior to Mr. Velez's trial, never picked a jury to completion. Walker further testified that prior to this trial, he had handled criminal matters at the G.A. level and that he had taken many juvenile matters to trial.
Attorney Walker further testified that the New London State's Attorney's Office has an "open file" policy and that Walker fully reviewed the file prior to trial. Walker further testified that he met with and discussed the criminal proceedings with Velez several times in the lock-up at Court, at Hartford Correctional Institution, and at least at one other facility where Velez was held. Walker further met with members of Velez's family in an attempt to obtain the names of potential witnesses but no such names were ever provided to Walker either by Velez or his family.
Walker noted further that he attempted to meet at the crime scene with a Mr. Morales, as Velez had requested, but that Morales failed to keep several appointments with Walker. Walker acknowledges that he did meet with Morales "at least once" and that Morales was called at the time of trial to testify.
Walker testified that the general theory of the Velez defense was the police identification of the defendant. Velez claimed that the police had misidentified him, specifically with respect to the color of a shirt that the police claimed the defendant was wearing at the time of the offense. The police identified the shirt that the offender was wearing as being one color and Velez claimed that the shirt he was wearing on the date of the incident was another color. Despite the fact that Walker asked Velez and his family to produce the subject shirt, it was never produced.
Walker further acknowledged that Velez did tell Walker that Velez believed that the trees and shrubs where the police claim they observed Velez engaging in the drug transaction were six CT Page 13584 feet tall and should have obscured the view of the police officer who claimed he saw Velez behind the bushes at the time of the incident. Though Velez claims that a family friend, Abner Gregory, had taken photographs of the crime scene that would substantiate Velez's position, Walker testified that the photos were not introduced into evidence at trial because the photos showed that the base of the bushes was open and clear and would have tended to corroborate Police Officer Meehan's testimony at trial.
With respect to the issue of the photographs, Abner Gregory testified at the habeas trial and noted that he did meet with Attorney Walker on at least two separate occasions prior to Velez's criminal trial. Gregory further testified that he could not recall the precise date on which the photos were actually taken nor could he testify that the photos depicted exactly how the property looked on the day that Velez was arrested.
As regards Velez's claim of juror misconduct, Walker notes that he did file a Motion for a New Trial based upon that claim, that a hearing was held by the Court and that the Motion was denied.
At the habeas trial, the petitioner, Velez, testified that on the morning of his trial he thought he was being transported to Juvenile Court for a hearing on a matter unrelated to his criminal charges when the transport van "took a wrong turn" and wound up at the criminal Court where Velez was placed on trial for the drug charges pending against him. This unusual assertion by the petitioner weighed heavily upon the habeas Court's assessment of the credibility of the petitioner.
Velez acknowledged that Attorney Walker met with Velez and discussed with him his pending criminal charges, including the drug charges. Velez further acknowledged that he knew his drug charges were going to be placed on the trial list after he (Velez) rejected an earlier plea disposition offer. Velez further testified that his defense at trial never included a claim that the drugs seized were not heroin nor that the offense did not occur within 1500 feet of a school. Velez agreed that the only issue at trial was whether the arresting officer, Officer Meehan, actually saw Velez behind the bushes where the drug transaction is alleged to have taken place. Velez further testified that his only real issue in this habeas proceeding is that Attorney Walker failed to do a proper investigation. CT Page 13585
As regards that Count of the Habeas petition regarding Attorney Sturman and the claimed failure to file an appellate brief and otherwise pursue an appeal on behalf of Velez, Attorney Sturman testified that he is the Chief Public Defender for the New London Judicial District, that he has been a public defender for some twenty year and Chief since 1985. Sturman further testified that there were no issues of merit that were worthy of appeal.
Sturman notes that there was nothing in the record to support the claim of the challenge to the jury array. There was no evidence presented and therefore nothing upon which to base an appeal on the challenge to the array.
As regards the possibility of an appeal of the trial Court's ruling on the issue of jury misconduct, Sturman asserts that the issue was raised by a Motion subsequent to the trial, the Motion was denied by the Court and there was nothing in the record to substantiate an appeal on the issue. Sturman notes that these matters were fully disclosed to and discussed with Mr. Velez.
Generally, in order for the petitioner in a habeas proceeding to succeed in his claim that he was denied the effective assistance of counsel in the criminal proceedings, he has the burden of proving both that his trial counsel's performance was deficient and that he was actually prejudiced by his counsel's deficient performance. Strickland v. Washington, 466 U.S. 668
(1984), Bunkley v. Commissioner, 222 Conn. 444 (1992),Copas v. Commissioner, 234 Conn. 139 (1995).
The petitioner's right to the effective assistance of counsel is assured by the sixth and fourteenth amendments to the Federal constitution and by Article First, Section 8 of the Connecticut constitution. In order to prove that his counsel's performance was deficient, the petitioner must demonstrate that trial counsel's representation fell below an objective standard of reasonableness. Aillon v. Meachum, 211 Conn. 352 (1989). Competent representation is not to be equated with perfection. "The constitution guarantees only a fair trial and a competent attorney; it does not ensure that every conceivable constitutional claim will be recognized and raised." Jeffrey v.Commissioner, 36 Conn. App. 216 (1994) (citations omitted). "Defense counsel's performance must be reasonably competent or within the range of competence displayed by lawyers with ordinary CT Page 13586 training and skill in the criminal law. Johnson v. Commissioner,36 Conn. App. 695 (1995).
In Strickland, the Supreme Court also noted that "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a Court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable . . . A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a Court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy . . . [C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Stricklandv. Washington, supra, 466 U.S. 689-90; Quintana v. Warden,220 Conn. 1 (1991); Williams v. Warden, 217 Conn. 419 (1991);Jeffrey v. Commissioner, 36 Conn. App. 216 (1994).
With respect to the prejudice component of the Strickland test, as a general proposition, the petitioner must demonstrate that, ". . . counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."Strickland v. Washington, supra 466 U.S. 687. Accordingly, "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id., 691. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome of the proceedings." Id., 693. Rather, a successful petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.Copas v. Commissioner, 234 Conn. 139 (1995). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland v. Washington, supra 466 U.S. 694. "`When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt CT Page 13587 respecting guilt.'" Fair v. Warden, 211 Conn. 398, 408 (1989);Jeffrey v. Commissioner, 36 Conn. App. 216 (1994).
The Court has carefully considered all of the evidence presented at the habeas trial and has further carefully considered and assessed the credibility of all of the witnesses who testified at said trial. The Court has also carefully considered the arguments of counsel presented to the Court at the conclusion of the habeas trial.
As regards the First Count of the Petition, the Court finds that the petitioner has failed to meet his burden in this matter. The evidence presented at the habeas trial does not substantiate the petitioner's claim that Attorney Walker failed to interview vital witnesses prior to trial; failed to call vital witnesses at the time of trial; failed to obtain exculpatory information and evidence for use during the trial; or otherwise failed to complete an adequate investigation for the defense of the petitioner. The evidence discloses the fact that Attorney Walker interviewed and called the witnesses as disclosed by the petitioner and completed an appropriate investigation. No evidence was submitted that would indicate that any further investigation by Attorney Walker would produce anything of importance or anything that would have been considered as exculpatory. Any conclusion to the contrary would have to be based purely upon speculation and unsubstantiated hope.
As regards the Second Count of the petition regarding the claimed juror misconduct and the failure of trial counsel to pursue a Motion for a New Trial, the evidence submitted at trial discloses that a Motion for a New Trial was submitted to, argued before and ruled upon by the trial Court (Parker, J.). The Second Count of the Petition is therefore without merit.
As regards the Third Count of the petition regarding appellate counsel, Attorney Sturman, the petitioner has similarly failed to meet his burden with respect to his claims against Attorney Sturman. The Court is satisfied that Attorney Sturman carefully considered each and every possible appellate issue on behalf of the petitioner and fully discussed and disclosed to the petitioner why the pursuit of an appeal would be without merit.
As regards the petitioner's allegations regarding the failure of trial counsel to pursue sentence review and his claim that he should now be permitted to his sentence review rights, (which CT Page 13588 claim the habeas Court allowed the petitioner to pursue by virtue of an oral motion made by counsel at the time of the habeas trial), this Court finds that insufficient evidence has been submitted to the Court upon which the Court could base a finding for the restoration of such rights.
For all of the foregoing reasons, the petition for habeas corpus relief is denied.
BY THE COURT
CARROLL, J.